[Cite as *State v. Creachbaum*, 2019-Ohio-566.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-16 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-370 |
| | : | |
| TRAVIS CREACHBAUM | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of February, 2019.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

JULIA B. PEPPO, Atty. Reg. No. 0037172, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Travis Creachbaum appeals his conviction and sentence for one count of burglary, in violation of R.C. 2911.12(A)(3), and one count of receiving stolen property, in violation of R.C. 2913.51(A). Creachbaum filed a timely notice of appeal with this Court on January 31, 2018.

{¶ 2} The incident which forms the basis for the instant appeal occurred between the dates of May 20 and May 21, 2017, while the complaining witness, Daniel Frye, was temporarily staying at his mother's house and away from his residence located in Springfield, Ohio. At the time, Frye was employed as a disc jockey (DJ). To that end, Frye testified that he owned speakers, amplifiers, and turntables. Frye also owned a large collection of video games, video game memorabilia, and comic books. Frye testified that he kept all of these items at his residence. Additionally, Frye testified that he had at least one security camera installed at his residence.

{¶ 3} On May 22, 2017, Frye returned to his residence in order to feed his dog. Upon arriving, Frye discovered that a glass window had been broken out of the rear door at his residence, and a security camera had been broken as well. When Frye entered his residence, he observed that his DJ equipment and a great deal of his video game memorabilia had been stolen. Several rooms in his residence had also been ransacked. Frye testified that he called the police to report the burglary. After calling the police, Frye reviewed the footage from his security camera. Frye contacted the owner of a local video game/comic book retailer, Game Cycle, in order to inform him of the theft of his memorabilia.

{¶ 4} Jason Fister, owner of the Lone Star Pawn Shop located in Xenia, Ohio,

testified that on May 22, 2017, the defendant-appellant, Creachbaum, entered his store and sold him two turntables, two speakers, and an amplifier. All of the equipment was later identified as belonging to Frye.

{¶ 5} Springfield Police Officer Kevin Hoying testified that on May 23, 2017, he traveled to Game Cycle. Officer Hoying testified that, upon arriving at the store, he observed Creachbaum and two females sitting in a black motor vehicle in the parking lot. Officer Hoying testified that he approached the vehicle and observed several trash bags containing video game memorabilia and comic books. Officer Hoying testified that Creachbaum stated that the items in the bags had come from the house of the mother of one of the females in the vehicle. Thereafter, Officer Hoying went into Game Cycle and learned from the manager of the store that Creachbaum had just attempted to sell him some of the items. All of the video game memorabilia and comic books were later identified as Frye's property which had been stolen at some point between May 20 and May 21, 2017. We also note that, before Frye's security camera was broken, it captured an image of Creachbaum breaking into Frye's residence during the aforementioned timeframe. Frye testified that he was able to identify Creachbaum in the captured image because they were longtime acquaintances, and Creachbaum had been a guest in Frye's home in the past.

{¶ 6} On July 10, 2017, Creachbaum was indicted for one count of burglary and one count of receiving stolen property. At his arraignment on July 18, 2017, Creachbaum pled not guilty to the offenses contained in the indictment.

{¶ 7} A jury trial was held on January 3, 2018, after which Creachbaum was found guilty of burglary and receiving stolen property. At his sentencing hearing on January 5,

2018, Creachbaum argued that his offenses were committed with the same animus and were therefore subject to merger. The trial court rejected Creachbaum's argument and sentenced him to three years in prison for burglary and one year in prison for receiving stolen property. The trial court also ordered the sentences to be served consecutively for a total sentence of four years in prison. Finally, the trial court ordered that the four-year sentence in the instant case be served consecutively to prison sentences Creachbaum was already serving from other cases arising out of Clark and Madison Counties, for an aggregate sentence of five years and nine months in prison.

{¶ 8} It is from this judgment that Creachbaum now appeals.

{¶ 9} Creachbaum's first assignment of error is as follows:

THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF APPELLANT IN IMPOSING MULTIPLE SENTENCES FOR ALLIED OFFENSES. THE TRIAL COURT ERRED IN DECIDING THAT THE TWO OFFENSES WERE COMMITTED AT DIFFERENT TIMES, BECAUSE THE BURGLARY AND THE THEFT OF THE PROPERTY BOTH HAPPENED ON THE SAME DAY, THE 20TH [OF] MAY, NOT ON TWO DIFFERENT DAYS, AND THUS THE COURT ERRED BY NOT MERGING DEFENDANT'S OFFENSES OF BURGLARY AND RECEIVING STOLEN PROPERTY [WHICH] SHOULD HAVE BEEN SENTENCED AS ALLIED OFFENSES OF SIMILAR IMPORT.

{¶ 10} In his first assignment, Creachbaum argues that the trial court erred when it denied his oral motion at sentencing for merger of his convictions for burglary and receiving stolen property.

{¶ 11} R.C. 2941.25, Ohio's allied offense statute, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 12} Initially, we note that Creachbaum argues that the Ohio Supreme Court's decision in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, contains a two-step analysis to be applied when determining whether offenses are subject to merger. Under step one, it must be determined whether "it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." (Emphasis sic.) *Id.* at ¶ 48. Put another way, if the conduct of the defendant constituting commission of offense one also constitutes commission of offense two, then the offenses are of similar import and the court must proceed to the second step. *Id.* Under step two of the analysis, it must be determined whether the offenses were committed as part of a single act, with a single state of mind. *Id.* at ¶ 49. If both steps of the analysis are met, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. On the other hand, if commission of one offense will never result in the commission of the other, or if the offenses are committed

separately, or with a separate animus for each offense, then under R.C. 2941.25(B), the offenses will not merge. *Id.* at ¶ 51.

{¶ **13**} Recently, however, in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court clarified the applicable standard with respect to the R.C. 2941.25 merger determination. Although the Supreme Court did not explicitly overrule *Johnson*, it stated that the "decision in *Johnson* was incomplete" and that *Johnson's* syllabus language did "not offer the complete analysis necessary to determine whether offenses are subject to merger rather than multiple convictions and cumulative punishment." *Id.* at ¶ 16.

{¶ **14**} In *Ruff*, the Ohio Supreme Court stated the following:

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import

must all be considered.

*Ruff* at ¶ 30-31.

{¶ 15} In *State v. Wood*, 2d Dist. Montgomery No. 26134, 2016-Ohio-143, we stated:

[T]he Ohio Supreme Court addressed the allied-offense issue again in *State v. Earley*, [145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266]. There the majority characterized the analysis in its earlier [*State v.*] *Johnson*[, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061] lead opinion as "largely obsolete." *Id.* at ¶ 11. The *Earley* court instead embraced *Ruff*, which, as noted above, considers a defendant's conduct, his animus, and the import or significance of his offenses. Applying *Ruff*, the *Earley* court concluded that misdemeanor OVI and felony aggravated vehicular assault "are offenses of dissimilar import and significance that are to be punished cumulatively." *Earley* at ¶ 20. For purposes of our analysis here, we note that a defendant bears the burden of establishing entitlement to merger, and we review a trial court's ruling on the issue de novo. *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 15.

* * *

We reach the same conclusion under the *Ruff* standard, which the Ohio Supreme Court applied in *Earley*. We see nothing in *Ruff* that alters or undermines the foregoing analysis about [the defendant's] commission of murder and aggravated robbery involving the same conduct committed with the same animus. For the reasons set forth above, we conclude that the

two offenses were not committed separately and were not committed with a separate animus or motivation. These findings remain pertinent under *Ruff*, which, as noted above, provides that offenses do not merge if "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25 [and] ¶ 30-31.

*Wood* at ¶ 54, quoting *State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 51, ¶ 60 (2d Dist.).

{¶ 16} An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶ 17} In support of his argument that his convictions for burglary and receiving stolen property were subject to merger, Creachbaum relies on our decision in *State v. Fair*, 2d Dist. Montgomery No. 24120, 2011-Ohio-3330. In *Fair*, we found that the State conceded at sentencing that the defendant's complicity to commit burglary and receiving stolen property charges were allied offenses of similar import, but the prosecutor did not elect an offense on which the defendant should be sentenced. *Id.* at ¶ 76. Thereafter, the trial court imposed a five-year prison term for Count I, complicity to commit burglary, and a one-year term for receiving stolen property. *Id.* The trial court found that "those

two charges arise out of * * * the same event and that the receiving could be considered a lesser charge of the * * * complicity to commit burglary, so the Court says that those would run concurrent or merge. I believe they would merge. But if they don't, they run concurrent." *Id.*

{¶ 18} We also stated the following in *Fair*:

> The court's judgment entry differs somewhat from the sentence that was orally imposed. The entry provides that Fair was sentenced to five years on Count 1 (complicity to commit burglary). As to receiving stolen property and assault on the peace officer, the entry imposes "a term of one (1) year on counts # 2 and 3 which merge into one (1) year term, but shall be served Consecutively to count # 1 for a term of (6) years of imprisonment."
>
> In light of the State's concession to the trial court, we will assume, with the facts before the court, that burglary and receiving stolen property are allied offenses of similar import. Although the trial court also expressed its belief that the two offenses would merge, the court imposed separate sentences for each of the offenses and "merged" two of the sentences. The trial court, in essence, imposed concurrent sentences and, by doing so, failed to properly merge the allied offenses. * * * Accordingly, we must remand to the trial court for a new sentencing hearing.

*Id.* at ¶ 77-78.

{¶ 19} In our view, our earlier holding in *Fair* is clearly distinguishable from the instant case. Unlike in *Fair*, the State here did not concede that Creachbaum's

convictions for burglary and receiving stolen property were subject to merger. Furthermore, in *Fair*, we analyzed the defendant's merger argument utilizing the "obsolete" two-step analysis enunciated in *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

{¶ 20} Conversely, we find that the facts of the instant case closely align with the facts in a more recent case decided by this Court, *State v. Skapik*, 2015-Ohio-4404, 42 N.E.3d 790 (2d Dist.), a post-*Ruff* case. In *Skapik*, the defendant argued grand theft (of a firearm) and receiving stolen property (the same firearm) should have merged because, when he stole a gun, he simultaneously received or retained it. *Id.* at ¶ 8. The record established that the defendant committed the theft offense on one night when he stole firearms, and the receiving stolen property offense occurred the next morning when he sold the property in another county. *Id.* at ¶ 9. In *Skapik*, we emphasized how receiving stolen property had alternative elements: "receive, retain, *or* dispose." *Id.* Because the "acts of stealing the guns and disposing of the guns occurred at different times and at different locations," we concluded the offenses involved separate conduct and were not subject to merger. *Id*; *compare State v. Green*, 11th Dist. Lake No. 2011-L-037, 2012-Ohio-2355, ¶ 68 ("We agree with the State that Green's conviction of Receiving Stolen Property stands independent of the conviction for Burglary/Grand Theft. The receiving and retention of * * * guns associated with the Burglary/Grand Theft was a distinct act, occurring in a different time and a different place, from the disposing of the guns by sale to Green's brother."); *see also State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 26 ("It is entirely reasonable for a court to infer in this case that Rogers received or retained the stolen truck and then removed the tires and rims in order to

dispose of them, thereby committing separate and distinct acts resulting in two separate and distinct counts of RSP, one for receiving or retaining the truck and the other for disposing of the tires and rims.").

{¶ 21} In the instant case, the record establishes that on either May 21 or 22, 2017, Creachbaum broke into Frye's residence in Springfield, Ohio, and stole video game memorabilia, comic books, turntables, speakers, and an amplifier. At some later point on May 22, 2017, Creachbaum traveled to a pawn shop in Xenia, Ohio, and sold all of the stolen DJ equipment. One day later on May 23, 2017, Creachbaum was located by police in the parking lot at Game Cycle in Springfield, Ohio, after attempting to sell the stolen video game memorabilia and comic books. Creachbaum's act of selling the DJ equipment itself constituted the offense of receiving stolen property in violation of R.C. 2913.51(A), which provides that "[n]o person shall receive, retain, or *dispose of property* of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." (Emphasis added.) Because Creachbaum's act of stealing the DJ equipment and disposing of the items occurred at different times and at different locations, we conclude that the theft and receiving stolen property offenses involved separate conduct. *See Skapik* at ¶ 9. Therefore, Creachbaum's convictions for burglary and receiving stolen property were not subject to merger.

{¶ 22} Creachbaum's first assignment of error is overruled.

{¶ 23} Creachbaum's second and final assignment of error is as follows:

BECAUSE THE OFFENSES WERE ALLIED OFFENSES OF SIMILAR IMPORT, THE TRIAL COURT ERRONEOUSLY HELD THAT THE

DEFENDANT ENGAGED IN A COURSE OF CONDUCT AND HARM CAUSED WAS SO GREAT OR UNUSUAL THAT NO SINGLE PRISON TERM CAN ADEQUATELY REFLECTS THE SERIOUSNESS OF HIS CONDUCT.

{¶ 24} In his second assignment, Creachbaum argues that, because his convictions for burglary and receiving stolen property were allied offenses subject to merger, the trial court erred when it imposed consecutive sentences because the record did not support a finding that Creachbaum had engaged in a "course of conduct." In light of our holding under the first assignment of error that Creachbaum's convictions for burglary and receiving stolen property were not subject to merger, his second assignment of error is without merit. However, we will address his second assignment to the extent that Creachbaum simply argues that the record does support the trial court's imposition of consecutive sentences.

{¶ 25} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 26} As this Court has previously noted:

"The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum

sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).

However, in exercising its discretion, a trial court must consider the statutory

policies that apply to every felony offense, including those set out in R.C.

2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-

Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio

St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

*State v. Armstrong*, 2d Dist. Champaign No. 2015-CA-31, 2016-Ohio-5263, ¶ 12.

**{¶ 27}** In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses

of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 28} At Creachbaum's sentencing hearing on January 5, 2018, the trial court stated:

The Court: On the issue of merger and consecutive sentences, the *Skapik* case does appear to be on point, but I think this case is --- There is even a stronger argument for separate offenses because the elements of the burglary are by force, stealth, or deception, trespassing in an occupied structure with purpose to commit therein a criminal offense. So as soon as he got into that house with the purpose to commit a theft, the burglary was completed.

Then he actually committed the theft offense and then over the course of the next day he continued to receive and possess that property and then disposed of it.

Some of it was recovered by the victim, but my recollection of his testimony was that most was not.

*I do find that consecutive sentences are necessary in this case to protect the public from future crime and to punish the defendant, that they're not disproportionate to the seriousness of his conduct and to the danger he poses to the public.*

*That his history of criminal conduct demonstrates that consecutive*

*sentences are necessary to protect the public from future crime by the defendant.*

*That these two offenses were committed as a part of a course of conduct and the harm caused was so great or unusual that no single term adequately reflects the seriousness of his conduct.*

The Court is going to order that the defendant be sentenced to three (3) years in the Ohio State Penitentiary for the burglary offense and one (1) year in the Ohio State Penitentiary for the receiving stolen property. Those sentences will run consecutively to one another for an aggregate sentence of four (4) years in the Ohio State Penitentiary.

That four-year sentence will run consecutively to the sentence the defendant is presently serving, one out of Clark County, Ohio and the other – * * *, what was the other county?

The State: Madison County.

The Court: Madison County case. ***

(Emphasis added.) Sentencing Tr. 8-10.

{¶ 29} As is evident from the above excerpt, the trial court made the requisite findings to support the imposition of consecutive sentences. The trial court found that Creachbaum's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant" pursuant to R.C. 2929.14(C)(4)(c). The trial court additionally found that, pursuant to R.C. 2929.14(C)(4)(b), "that these two offenses were committed as a part of a course of conduct and the harm caused was so great or unusual that no single term adequately

reflects the seriousness of his conduct."

**{¶ 30}** Upon review, we conclude that the record supports the findings made by the trial court. Specifically, the record establishes that the Creachbaum had a history of criminal convictions: one conviction for an unknown offense in 2007 for which he served six months in prison, and another conviction for burglary in 2008 for which he served five years in prison. Furthermore, at the time of sentencing in the instant case, Creachbaum was already serving time in prison for convictions in Clark and Madison Counties. Accordingly, we find that the trial court did not err when it imposed consecutive sentences.

**{¶ 31}** Creachbaum's second assignment of error is overruled.

**{¶ 32}** Both of Creachbaum's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Andrew P. Pickering
Julia B. Peppo
Hon. Douglas M. Rastatter